E-FILED
Monday, 25 September, 2017  10:32:09 AM
Clerk, U.S. District Court, ILCD

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| BRANDON L. CORDELL, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No.: 15-1422-CSB |
| | ) | |
| | ) | |
| SHANE WOODS, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

## ORDER

**COLIN S. BRUCE, U.S. District Judge:**

This cause is before the Court on Defendants' motion for summary judgment.  As explained more fully below, Defendants are entitled to summary judgment because Plaintiff Brandon L. Cordell has failed to identify any admissible evidence with which to show that his filing grievances was a motivating factor in any alleged retaliatory actions taken against him by Defendants.  Because no question of fact exists that needs to be determined by a trier of fact, Defendants' motion for summary judgment is granted.

## I.
## MATERIAL FACTS

Plaintiff Brandon L. Cordell is an inmate within the Illinois Department of Corrections ("IDOC").  From 2009 until November 2014, Cordell was housed the IDOC's Illinois River Correctional Center ("Illinois River").  Cordell was transferred to the IDOC's Pinckneyville Correctional Center ("Pinckneyville") in November 2014.

1

Defendants Shane Woods, Brad Johnson, Bruce Fisher, Shane Donelson, and Bret Robison were correctional officers at Illinois River when Cordell was housed at that facility.  Defendant Gregory Gossett was the Warden at Illinois River, and Defendant Billie Greer was a member of the Administrative Review Board ("ARB") in Springfield, Illinois, during the relevant time.

On October 9, 2015, Cordell filed this lawsuit against Defendants under 42 U.S.C. § 1983.  Thereafter, the Court conducted a merit review of Cordell's Complaint as required by 28 U.S.C. § 1915A.  Therein, the Court explained that, although Cordell had fashioned his Complaint in an attempt to state a conspiracy claim, Cordell's Complaint was more properly characterized as a retaliation claim in violation of his First Amendment rights, and the Court allowed this suit to proceed on that claim.

During the discovery period, Cordell clarified that Defendants retaliated against him in four ways.  *First*, Cordell claims that Defendants—and more specifically, Defendant Donelson—lost or destroyed his grievances simply because he had filed them and because Defendant Donelson did not want the grievances processed or heard. *Second*, Cordell claims that Defendants Fisher and Gossett denied his grievances because he refused to act as an informant in an investigation being conducted regarding alcohol that was found in the Illinois River's bakery where Cordell worked.  *Third*, Cordell asserts that Defendant Greer denied his grievances on appeal to the ARB in an attempt to hide or to cover-up the retaliation by the other Defendants at Illinois River and in retaliation for him exercising his First Amendment rights.  *Fourth*, Cordell argues that Defendants Woods, Johnson, Donelson, and Robison retaliated against him by: (a)

2

verbally harassing him; (b) preventing him from being reassigned to work in the bakery; (c) removing him from his work assignment in Illinois River's toxic storeroom; (d) searching his cell on August 21, 2014 and again on August 23, 2014; and (e) filing a false disciplinary report against him on August 23, 2014 for possessing or distributing cannabis. Cordell basis his retaliation claim on the following undisputed facts.

From August 16, 2013 until December 16, 2013, Cordell worked at the bakery at Illinois River. On December 14, 2013, correctional officers conducted a search of the bakery and discovered bags and buckets of fermented liquor, a homemade still, ingredients to brew more alcohol, and other contraband items. All inmates who worked in the bakery in the area where Cordell worked had their employment in the bakery terminated on December 16, 2013.

Between December 16, 2013 and December 30, 2013, Defendants Woods and Robison interviewed Cordell about the alcohol and the other contraband found in the bakery. Cordell told Woods and Robison that he did not know where the contraband came from or to whom it belonged. According to Cordell, Woods and Robison asked him to become an informant in the investigation concerning the alcohol found at the bakery. When Cordell refused, Woods and Robison began verbally harassing him, verbally threatening him, and interfering with his ability to obtain a job at Illinois River, specifically returning to his job at the bakery.[1]

---

[1] Defendants deny harassing or threatening Cordell.

Cordell submitted grievances on December 27, 2013, on July 28, 2014, and on August 16, 2014, regarding the adverse treatment and retaliation that he was experiencing.  Cordell never received a response to these three grievances.

On May 12, 2014, Cordell was approved to work in Illinois River's toxic storeroom.  On June 25, 2014, Robison took custody of cannabis brought to him by a confidential informant.  This confidential informant told Robison that he had purchased the cannabis from Cordell.  That same day, the Internal Affairs Department at Illinois River began an investigation into whether Cordell or others had possessed and distributed cannabis in the prison.

 Cordell began his job in the toxic storeroom on July 25, 2014.  Cordell's job duties in this position included picking up and dropping off bottles of cleaning supplies and disinfectants in the housing unit, the healthcare unit, and the administration building at Illinois River.  Two or three days later, Cordell's job at the toxic storeroom was terminated.  Defendant Johnson asked that Cordell's job at the toxic storeroom be terminated because the toxic storeroom assignment gave Cordell the ability to move throughout the prison common areas with less supervision at a time when he was under investigation for selling cannabis.  Given this freedom of movement and the on-going investigation into Cordell's alleged cannabis distribution, Defendant Johnson believed that Cordell's toxic storeroom assignment was detrimental to the safety and security at Illinois River.[2]

---

[2] Cordell believes that the true motivation for the termination of his position at the toxic storeroom was retaliation in violation of his First Amendment rights.

4

On August 21, 2014, Defendants Robison and Johnson participated in a search of Cordell's cell in conjunction with the cannabis investigation against Cordell. On August 23, 2014, Defendant Johnson participated in a second search of Cordell's cell.

On August 26, 2014, an Investigative Discipline Report was filed against Cordell alleging that he had sold cannabis, and Cordell was moved to segregation housing under investigative status later that same day. On August 29, 2014, Defendants Donelson and Robison interviewed Cordell as part of their investigation of his alleged cannabis distribution. On September 17, 2014, Defendant Woods prepared and filed a disciplinary report against Cordell that replaced the August 26, 2014 Investigative Discipline Report. Cordell received a hearing on the September 17, 2014 Disciplinary Report after which the Disciplinary Committee found Cordell guilty of selling cannabis and making false statements during his August 29, 2014 interview. As punishment, Cordell received ninety days of segregation, six months of "C-grade," six months of no contacts visits, and was transferred to Pinckneyville.[3]

## II.
## STANDARDS GOVERNING SUMMARY JUDGMENT

Federal Rule of Civil Procedure 56(a) provides that summary judgment shall be granted if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. FED. R. CIV. P. 56(a); *Ruiz-Rivera v. Moyer*, 70 F.3d 498, 500-01 (7th Cir. 1995). The moving party has the burden of providing

---

[3] Cordell claims that he was found guilty at the disciplinary hearing and that his grievances and appeals were denied because he would not act as an informant and because he submitted grievances, not because the findings and denials were supported by any evidence.

proper documentary evidence to show the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986). Once the moving party has met its burden, the opposing party must come forward with specific evidence, not mere allegations or denials of the pleadings, which demonstrates that there is a genuine issue for trial. *Gracia v. Volvo Europa Truck, N.V.*, 112 F.3d 291, 294 (7th Cir. 1997). "[A] party moving for summary judgment can prevail just by showing that the other party has no evidence on an issue on which that party has the burden of proof." *Brazinski v. Amoco Petroleum Additives Co.*, 6 F.3d 1176, 1183 (7th Cir. 1993). "As with any summary judgment motion, we review cross-motions for summary judgment construing all facts, and drawing all reasonable inferences from those facts, in favor of the nonmoving party." *Laskin v. Siegel*, 728 F.3d 7314, 734 (7th Cir. 2013)(internal quotation marks omitted).

Accordingly, the non-movant cannot rest on the pleadings alone, but must designate specific facts in affidavits, depositions, answers to interrogatories or admissions that establish that there is a genuine triable issue; he must do more than simply show that there is some metaphysical doubt as to the material fact. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 261 (Brennan, J., dissenting) (1986)(quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)); *Hot Wax, Inc. v. Turtle Wax, Inc.*, 191 F.3d 813, 818 (7th Cir. 1999). Finally, a scintilla of evidence in support of the non-movant's position is not sufficient to oppose successfully a summary judgment motion; "there must be evidence on which the jury could reasonably find for the [non-movant]." *Anderson*, 477 U.S. at 252.

### III.
### CORDELL HAS FAILED TO OFFER ANY ADMISSIBLE EVIDENCE WITH WHICH TO CREATE A GENUINE ISSUE OF MATERIAL FACT

The United States Supreme Court has explained that "a prison inmate retains those First Amendment rights that are not inconsistent with his status as a prisoner or with the legitimate penological objectives of the corrections system." *Pell v. Procunier*, 417 U.S. 817, 822 (1974). Similarly, the United States Court of Appeals for the Seventh Circuit has opined: "[F]ederal courts must take cognizance of the valid constitutional claims of prison inmates. Like students who do not shed their free speech rights at the schoolhouse gates, neither do prison walls form a barrier separating prison inmates from the protections of the Constitution." *Bridges v. Gilbert*, 557 F.3d 541, 547-48 (7th Cir. 2009)(internal quotations and citations omitted).

In order "[t]o prevail on a First Amendment retaliation claim, [a plaintiff] must ultimately show that (1) he engaged in activity protected by the First Amendment; (2) he suffered a deprivation that would likely deter First Amendment activity in the future; and (3) the First Amendment activity was at least a motivating factor in the Defendants' decision to take the retaliatory action." *Id*. at 546 (internal quotations omitted); *Gomez v. Randle*, 680 F.3d 859, 866 (7th Cir. 2012)(same); *Massey v. Johnson*, 457 F.3d 711, 716 (7th Cir. 2006). If the plaintiff is able to satisfy this *prima facie* case, the burden shifts to the defendant "to rebut with evidence that the [defendant's animus] though a sufficient condition was not a necessary condition of the conduct, *i.e.*, it would have happened anyway." *Green v. Doruff*, 660 F.3d 975, 980 (7th Cir. 2011). If the defendant can make such a showing, the plaintiff "must then demonstrate that the

defendant's proffered reasons for the decision were pretextual and that the retaliatory animus was the real reason for the decision." *Zellner v. Herrick*, 639 F.3d 371, 378-79 (7th Cir. 2011).

"An act taken in retaliation for the exercise of a constitutionally protected right violates the Constitution." *DeWalt v. Carter*, 224 F.3d 607, 618 (7th Cir. 2000). "Otherwise permissible actions by prison officials can become impermissible if done for retaliatory reasons." *Zimmerman v. Tribble*, 226 F.3d 568, 573 (7th Cir 2000). "A 'motivating factor' in this context 'is a factor that weighs in [on] the defendant's decision to take the action complained of-in other words, it is a consideration present to his mind that favors, that pushes him toward action." *Dace v. Smith-Vasquez*, 658 F. Supp. 2d 865, 881 (S.D. Ill. 2009)(quoting *Hasan v. United States Dept. of Labor*, 400 F.3d 1001, 1006 (7th Cir. 2005)). A plaintiff may demonstrate that his speech was a motivating factor behind the defendant's retaliatory actions by presenting direct or circumstantial evidence. *Kidwell v. Eisenhauer*, 679 F.3d 957, 965 (7th Cir. 2012).

"Direct evidence is evidence which, if believed by the trier of fact, will prove the particular fact in question without reliance upon inference or presumption." *Rudin v. Lincoln Land Cmty. College*, 420 F.3d 712, 720 (7th Cir. 2005)(internal quotation omitted). Direct evidence is rare and is something along the lines of a direct admission. *Naficy v. Illinois Dept. of Human Servs.*, 697 F.3d 504, 512 (7th Cir. 2012); *Benders v. Bellows & Bellows*, 515 F.3d 757, 764 (7th Cir. 2008).

On the other hand, "[c]ircumstantial evidence . . . is evidence from which a trier of fact may infer that retaliation occurred." *Kidwell*, 679 F.3d at 966. "Circumstantial

evidence may include suspicious timing, ambiguous oral or written statements, or behavior towards or comments directed at other[s] . . . ." *Long v. Teachers' Retirement Sys. of Illinois*, 585 F.3d 344, 350 (7th Cir. 2009). Regardless of whether the plaintiff offers direct or circumstantial evidence, "[t]o demonstrate the requisite causal connection in a retaliation claim, [a] plaintiff[] must show that the protected activity and the adverse action are not wholly unrelated." *Sauzek v. Exxon Coal USA, Inc.*, 202 F.3d 913, 918 (7th Cir. 2000). "If he can show that retaliatory animus was a factor, then the burden shifts to the defendants to prove that the same actions would have occurred in the absence of the protected conduct." *Soto v. Bertrand*, 2009 WL 1220753, * 1 (7th Cir. 2009).

Cordell has failed to offer admissible evidence with which to create a genuine issue of material fact that each Defendant was motivated, at least in part, to retaliate against him because he exercised his First Amendment rights. Accordingly, Defendants are entitled to the summary judgment that he seeks.

Some of Cordell's claims are easily resolved. Cordell admits that he has no evidence that Defendant Greer retaliated against him. Accordingly, Greer is entitled to summary judgment.

In addition, Cordell cannot base his retaliation claim upon the fact that he would not cooperate in the investigations into alcohol or marijuana found at Illinois River. As the Court explained in its Merit Review Order, the Seventh Circuit has not definitively decided whether refusing to become an informant is an activity protected by the First Amendment. However, this Court has held that "a First Amendment right not to speak . . . does not extend to refusing to act as an informant as a condition of receiving a

9

prison job." *Clark v. Gipson*, 2015 WL 328966, * 5 (C.D. Ill. Jan. 26, 2015).  Therefore,

Cordell cannot base his First Amendment retaliation claim upon the fact that he would

not act as an informant.  Rather, h may only base his claim upon his allegations that

Defendants retaliated against him because he filed grievances in violation of his First

Amendment rights.

As for his contention that Defendants—specifically Donelson—destroyed his

grievances, Cordell has offered no admissible proof to substantiate that claim.  Instead,

Cordell contends that Donelson knew and worked with Jeffery Hefferen.  Cordell states

that, because Hefferen was the individual who destroyed his grievances and because

Hefferen worked with Donelson, it is reasonable to assume that Donelson knew of his

grievances and helped lose or destroy them.

Cordell did not name Hefferen as a party Defendant.  More importantly, Cordell

offers nothing other than speculation to support his assertion.  Speculation and

conjecture are not a sufficient basis upon which to proceed to trial or to defeat summary

judgment. *Good v. University. of Chicago Med. Ctr.*, 673 F.3d 670, 675 (7th Cir. 2012)

("[G]uesswork and speculation are not enough to avoid summary judgment.")

(*overruled on other grounds by Ortiz v. Werner Enters., Inc.*, 673 F.3d 670 (7th Cir. 2016)).

In any event, Cordell does not claim that he was damaged in any way by

Donelson's alleged destruction of his grievances.  He does not claim that he was denied

any access to the courts, and Defendants have not moved to dismiss this case based

upon a failure to exhaust administrative remedies.  Therefore, even if Donelson or

another Defendant destroyed Cordell's three grievances of which he complains, Cordell

has not explained how the destruction violated his constitutional rights. *Stone v. Hammers*, 2017 WL 1843687, * 1 (C.D. Ill. May 8, 2017)(citing *Antonelli v. Sheahan*, 81 F.3d 1422, 1430 (7th Cir. 1996)("Plaintiff states no claim against Defendant Wise, the counselor who allegedly failed to respond to Plaintiff's grievances or failed to respond appropriately. This alleged failure does not give rise to a constitutional violation because inmates have no constitutional right to an effective grievance procedure.").

Furthermore, Cordell has failed to offer any admissible facts with which to show that Defendants Fisher or Gossett had any personal involvement in any alleged denial of his First Amendment rights.[4] "[I]ndividual liability under § 1983 requires 'personal involvement in the alleged constitutional deprivation.'" *Minix v. Canarecci*, 597 F.3d 824, 833 (7th Cir. 2010)(quoting *Palmer v. Marion County*, 327 F.3d 588, 594 (7th Cir. 2003)).

Indeed, the Seventh Circuit has explained that the doctrine of *respondeat superior* (a doctrine whereby a supervisor may be held liable for an employee's actions) has no application to § 1983 actions. *Gayton v. McCoy*, 593 F.3d 610, 622 (7th Cir. 2010). Instead, in order for a supervisor to be held liable under § 1983 for the actions of his subordinates, the supervisor must "approve[] of the conduct and the basis for it." *Chavez v. Illinois State Police*, 251 F.3d 612, 651 (7th Cir. 2001); *Gentry v. Duckworth*, 65 F.3d 555, 561 (7th Cir. 1995)("An official satisfies the personal responsibility requirement of

---

[4] Much of Cordell's declaration that he has submitted in support of his response to Defendants' motion for summary judgment is based upon hearsay and speculation. As such, Cordell cannot rely upon his declaration to create a question of fact, especially where his declaration is contrary to the testimony that he gave during his deposition.

section 1983 . . . if the conduct causing the constitutional deprivation occurs at [his] direction or with [his] knowledge and consent.")(internal quotation omitted).

"[S]upervisors must know about the conduct and facilitate it, approve it, condone it, or turn a blind eye for fear of what they might see.  They must in other words act either knowingly or with deliberate, reckless indifference." *Backes v. Village of Peoria Heights, Illinois*, 662 F.3d 866, 870 (7th Cir. 2011)(quoting *Chavez*, 251 F.3d at 651)). "In short, some causal connection or affirmative link between the action complained about and the official sued is necessary for § 1983 recovery." *Gentry*, 65 F.3d at 561.

Here, Cordell has failed to offer any evidence that Defendants Gossett or Fisher had the personal involvement necessary to hold them liable under § 1983.  Defendant Gossett was the Warden at Illinois River, and Warden Gossett was not involved in denying Cordell's grievances.  Cordell even admitted during his deposition that he possesses no evidence that Warden Gossett knew that Cordell had refused to be an informant or that he had filed any grievances.

Likewise, Cordell acknowledged during his deposition that he had no evidence that Defendant Fisher (a member of the Disciplinary Committee that found him guilty on the September 17, 2014 Disciplinary Report) knew that he had refused to cooperate in the alcohol at the bakery investigation.  Cordell may suspect that Fisher spoke with others about the investigation, but he offers no proof to support his suspicion.  The mere fact that he hearing occurred after Cordell refused to cooperate is not in-and-of-itself evidence that Fisher's true motivation was retaliation.  The Disciplinary Committee's decision was based upon sufficient evidence, and Cordell was afforded the

Due Process protections established by the United States Supreme Court in *Wolff v. McDonnell*, 418 U.S. 539, 563-67 (1974).  Therefore, Warden Gossett and Fisher are entitled to summary judgment. *Burton v. Davis*, 41 F. App'x 841, 845 (7th Cir. 2002) ("Prisoners have a right to be free from arbitrary actions by prison officials, but the protection from such actions is found in the procedures mandated by due process. *See id.* at 787; *McKinney v. Meese,* 831 F.2d 728, 733 (7th Cir. 1987); *Hanrahan v. Lane,* 747 F.2d 1137, 1140–41 (7th  Cir. 1984).  'Once the prisoner has been afforded those protections, our role as the reviewing court is limited to determining whether there was sufficient evidence to support the committee's decision.' *McKinney,* 831 F.2d at 733.").

That leaves Cordell's claim against Defendants Woods, Johnson, Donelson, and Robison that the Court will address *seriatim.*  As for the alleged verbal harassment, the only verbal harassment of which Cordell complains is his assertion that Defendants warned or threatened him that he would not receive a job in bakery or any job unless he cooperated.  This type of verbal harassment is insufficient to invoke the First Amendment protections, especially in this case where Defendants Donelson and Robison approved Cordell to a job placement sheet that approved Cordell's reassignment to a position in the bakery.

As one district court has explained:

"[T]he Constitution does not compel guards to address prisoners in a civil tone using polite language," *Antoine v. Uchtman*, 275 Fed Appx. 539, * 1, 2008 WL 1875948 (7th Cir. 2008), and it "would trivialize the First Amendment to hold that harassment for exercising the right of free speech was always actionable no matter how unlikely to deter a person of ordinary firmness from that exercise." *Bart v. Telford*, 677 F.2d 622, 625 (7th Cir. 1982).  Courts routinely reject retaliation claims based solely on

13

> incidents of verbal harassment or other conduct that was not sufficiently adverse. *See, e.g., Gallo v. Stokes*, ––– Fed. Appx. ––––, 2017 WL 1434408, * 2 (7th Cir. Apr. 24, 2017)(verbal reprimand for filing a grievance was not "severe enough" to deter future protected speech); *Antoine*, 275 Fed. Appx. at 541 (threats and racist comments by guards insufficient to sustain retaliation claim); *Salem v. Spryes*, 2014 WL 2698586, *2 (N.D. Ill. June 13, 2014)(prison staff action of giving 10–minute Christian sermons, forcing inmates to pray to veterans, calling plaintiff a "piece of shit, saying plaintiff was another inmate's girlfriend and throwing another inmate's Koran not sufficiently adverse to sustain retaliation claim); *Heard v. Hardy*, 2013 WL 3812102, at *3 (N.D. Ill. Jul. 22, 2013)(no retaliation claim based on allegations that guard "overly tightened [plaintiff's] handcuffs (from which [plaintiff] suffered no injury and sought no medical attention), made him stand for hours in [the] shower area, and teased him about his father's passing); *Sanders v. Salemi*, 2012 WL 353844 (N.D. Ill. Feb 1, 2012) (no retaliation claim where officer held out her middle finger, stuck out her tongue, and said that she would "get" him).

*Long v. Hammer*, 2017 WL 3403796, * 7 (W.D. Wis. Aug. 8, 2017). Defendants alleged verbal threats were not sufficient to chill Cordell in his speech or in filing grievances, and in any event, Cordell was approved to work in the bakery—the exact alleged retaliatory action upon which Cordell bases his claim.

Furthermore, Cordell's loss of his work assignment in the toxic storeroom, the searching of his cell, and the disciplinary report are insufficient to raise a question of fact that precludes summary judgment. Cordell bases this part of his retaliation claim on the sequence or timing of the events, *i.e.*, he refused to act as an informant in the alcohol investigation and filed grievances, and subsequently, he lost his toxic storeroom job, was charged with cannabis distribution, was found guilty on the disciplinary ticket, and received discipline.

However, the law is clear that suspicious timing alone cannot create a triable issue of fact in connection with retaliation claim. *Andonissamy v. Hewlett–Packard Co.*, 547

F.3d 841, 851 (7th Cir. 2008)("[M]ere temporal proximity is not enough to establish a genuine issue of material fact."); *Soto v. Bertrand,* 328 Fed. App'x. 331 (7th Cir. May 6, 2009)(suspicious timing alone did not warrant a trial on inmate's claim that he was placed in segregation in retaliation for his grievances).

In this case, the timing or sequence of events does not raise an inference of retaliation. Cordell refused to act as an informant in December 2013. Although Cordell lost his bakery job, so did all of the other inmate workers at the bakery. Cordell claims that other inmates were able to return to their jobs in the bakery, but he omits the fact that he too was approved for a return to the bakery. Thus, no inference of retaliation may be made.

Moreover, Cordell did not lose his job in the toxic storeroom until seven months after he refused to cooperate; his cell was not searched until eight months later; and he did not receive any discipline on the cannabis ticket until nine months later. These gaps in time are insufficient to raise an inference of retaliation based upon the timing or sequence of events. *Irby v. Siedschlag*, 160 F. App'x 499, 501 (7th Cir. 2005)("here, the one-month and then nine-month span between Irby's grievance and the two disciplinary cases at issue does not even amount to suspicious timing"); *Benson v. Cady,* 761 F.2d 335, 342 (7th Cir. 1985)(holding that six-day period between when plaintiff contacted attorney and alleged retaliatory conduct by defendants not sufficient from which to infer retaliatory motive). Therefore, Defendants Woods, Johnson, Donelson, and Robison are entitled to summary judgment on Cordell's First Amendment retaliation claim.

Finally, Cordell's motion for counsel is denied. Because the Court has granted summary judgment, Cordell will not need the assistance of counsel at trial. In addition, the Court does not believe that counsel would have made a difference in the outcome of this case because the undisputed evidence demonstrates that Defendants are entitled to judgment as a matter of law on Cordell's retaliation claim.

**IT IS, THEREFORE, ORDERED:**

1.      **Plaintiff's motion for counsel [74] is DENIED.**

2.      **Defendants' motion for summary judgment [69] is GRANTED. The Clerk of the Court is directed to enter judgment in Defendants' favor and against Plaintiff. All other pending motions are denied as moot, and this case is terminated with the Parties to bear their own costs. All deadlines and settings on the Court's calendar are vacated.**

3.      **If Plaintiff wishes to appeal this judgment, he must file a notice of appeal with this Court within 30 days of the entry of judgment. Fed. R. App. P. 4(a)(4).**

4.      **If Plaintiff wishes to proceed in forma pauperis on appeal, his motion for leave to appeal in forma pauperis must identify the issues that he will present on appeal to assist the Court in determining whether the appeal is taken in good faith. _See_ Fed. R. App. P. 24(a)(1)(c); _Celske v. Edwards_, 164 F.3d 396, 398 (7th Cir. 1999)(an appellant should be given an opportunity to submit a statement of his grounds for appealing so that the district judge "can make a responsible assessment of the issue of good faith."); _Walker v. O'Brien_, 216 F.3d 626, 632 (7th Cir. 2000)(providing that a**

**good faith appeal is an appeal that "a reasonable person could suppose . . . has some**

**merit" from a legal perspective).  If Plaintiff chooses to appeal, he will be liable for**

**the $505.00 appellate filing fee regardless of the outcome of the appeal.**

Entered this 25th day of September, 2017

_____/s Colin S. Bruce_____
COLIN S. BRUCE
UNITED STATES DISTRICT JUDGE

17